

FILED
MAR 8 - 2015
LESLIE MASON
CIRCUIT CLERK

IN THE CIRCUIT COURT OF MISSISSIPPI COUNTY, ARKANSAS

JEREMY SUMMERS                                                      PLAINTIFF

VS                      NO.: CV-2015-52 (BD)

CHELSEY GRIMES, JOHNNY FRY,                       DEFENDANTS
the CITY OF BLYTHEVILLE, ARKANSAS,
and the ARKANSAS MUNICIPAL LEAGUE

## COMPLAINT

Comes now the plaintiff, Jeremy Summers (Summers), by and through his attorney, the Morris W. Thompson Law Firm, P.A., and for his Complaint against the defendants, the City of Blytheville Arkansas (Blytheville), Arkansas Municipal League (AML), Johnny Fry (Fry), and Chelsey Grimes (Grimes), and alleges and states as follows:

### JURISDICTION AND VENUE

1. This action is brought under *Ark. Const. Art. 2 § 2, and Ark. Const. Art. 2 § 15; the Arkansas Civil Rights Act of 1993 (ACRA)*, codified at A.C.A. § 16-123-101 et seq. wherein Summers seeks redress against, Grimes in her individual capacity, Fry in his individual capacity, and the City of Blytheville, Arkansas for their acts of commission and omission as well as the city's policies, procedures, customs, and practices which violated Summers' rights protected by the Arkansas Constitutions and the ACRA to be free of excessive force as well as deprivations of his bodily integrity.

2. Additionally, pursuant to *Martinez v. California*, 444 U.S. 277 (1980), *Arkansas Writers' Project, Inc. v. Ragland*, ___ U.S. ___, (1987), and *R.L. Newton, et al. v. Etoch*, 332 Ark. 325, (1998), this court has concurrent jurisdiction to redress violations by Grimes, Fry, and the city of Blytheville, Arkansas, of Summers' rights protected by the U.S.

1

Constitution, particularly the Fourth and Fourteenth Amendments, and the Civil Rights Act of 1871 codified as 42 U.S.C. § 1983.

3. This action includes suits against public officers for acts done by them in virtue of or under color of his or her office. Consequently venue is proper in this Court pursuant to Arkansas Code Ann. § 16-60-102 (2).

4. Furthermore, this action seeks damages for personal injuries arising out of the motor vehicular incident which occurred in the city of Blytheville, Mississippi County, Arkansas on October 25, 2013. Consequently, venue is proper in the Chicasawba District of Mississippi County, Arkansas pursuant to Ark Code Ann §16-55-213(a).

5. Accordingly, this Honorable Court has jurisdiction over the subject matter and the parties in this action, and venue lies properly herein.

PARTIES

6. Summers is a citizen and resident of Mississippi County, Arkansas, and was at all times material to this cause of action.

7. Blytheville is a municipality organized and existing under the laws of the State of Arkansas. Blytheville is a city of First Class situated in Mississippi County and was, at all relevant times, the employer of Fry and Grimes.

8. AML, organized in 1934, is and was, at all relevant times, a voluntary, non-partisan organization comprised of incorporated cities and towns of Arkansas. Its mission is to serve its members in a variety of ways, through, among other things, optional programs such as the Municipal Legal Defense Program and its Municipal Vehicle Program.

9. Blytheville, at all relevant times, was a member of AML and participated in AML's Legal Defense Program. The acts of which the Summers complains constitute a civil

2

rights lawsuit against the city of Blytheville, Fry, and Grimes. Accordingly AML's Legal Defense Program is a primary or secondary indemnification party regarding Blytheville's acts and those of Fry and Grimes of which Summers complains.

10. Blytheville, at all relevant times, was a participant in AML's Municipal Vehicle Program. Blytheville has waived its tort immunity and is amenable to suit up to the amount of its coverage.

11. As the employer of Fry and Grimes, the city of Blytheville, Arkansas by respondeat superior is legally responsible and liable for the negligent actions of its employees to the extent it has automobile liability coverage as described in A.C.A. § 21-9-303.

12. Upon information and belief, at all relevant times, Blytheville carried with AML automobile liability coverage in excess of the $25,000.00 minimum described by the Motor Vehicle Safety Responsibility Act, § 27-19-101 et seq. As a result, Summers has a direct cause of action against AML for all amounts in excess thereof.

13. Furthermore, both Fry and Grimes were acting under the color of their authority at all times pertinent and were doing so when they caused the injuries to Jeremy Summers.

14. Fry is, and was at all relevant times, employed as a patrol officer with the Blytheville Police Department and was on duty driving his assigned patrol car at the relevant time.

15. Grimes, is and was, at all relevant times, employed as a patrol officer with the Blytheville Police Department and was on duty driving her assigned patrol car at the relevant time.

3

## FACTS

16. On October 25, 2013 Summers was riding a motorcycle eastbound on Ash Street in the city of Blytheville, Arkansas. Ash is a one way street running east and west in the city.

17. Fry was patrolling the area of 16th Street and Ash. Fry got in behind and began to follow Summers in an attempted to stop Summers for ostensibly running a stop sign at 14th and Ash.

18. As his motorcycle did not have a rear view mirror, Summers did not notice Fry behind him and he continued to ride east on Ash.

19. Fry observed Summers waiver and almost lose control of the motorcycle and he concluded that Summers must either be an inexperienced rider or unfamiliar with this motorcycle.

20. Despite the fact that Fry had only probable cause to stop Summers for a minor traffic offense, running a stop sign, Fry continued the close pursuit.

21. Before they approached the intersection with 8th Street, so that other units would know their location, direction and location of travel, Fry radioed he was in pursuit of a motorcycle and they were eastbound on Ash approaching the railroad tracks.

22. Grimes, was parked in a parking lot just east of the 8th Street intersection when the call came out. She pulled her patrol car through the parking lot and stopped, waiting for Summers to get closer.

23. Grimes saw Summers riding in the right hand lane. When Summers within a block of her position, Grimes pulled her patrol car out of the parking lot onto Ash Street in front of Summers, straddling the yellow line, blocking both lanes of travel.

24. Summers attempted to stop, but did not have time. In that Grimes had blocked both lanes of travel Summers' collision with Grimes' patrol car was unavoidable.

25. Summers' motorcycle slammed into the back of Grimes' patrol car, throwing Summers' body into the air and landing on the pavement in front of Grimes' patrol car.

4

26. Fry too was unable to stop in time to avoid hitting Summers' motorcycle knocking it into the air and over the top of Grimes' patrol car as well.

27. Summers suffered devastating bodily injuries and had to be airlifted to a hospital in Memphis, Tennessee.

28. Fry and Grimes were employed as patrol officers of the Blytheville Police Department. As such both were driving their vehicles consistent with their duties and responsibilities and within the scope and extent of their employment. Both Fry and Grimes had been given full authority and permission to be in possession and control of their vehicles and have them upon the public streets and highways.

29. Blytheville had in place police policies, procedures, and customs which allowed and authorized the use of force such as used against Summers.

## FEDERAL CLAIMS PURSUANT TO SECTION 1983

### I. EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT

30. Summers hereby incorporates and re-alleges the factual allegations of paragraphs one (1) through (29) as though fully alleged herein.

31. Grimes used excessive force in setting up a roadblock which she knew did not allow sufficient warning or time to enable Summers to bring his motorcycle to a controlled and safe stop.

32. The force used by Grimes was excessive, unnecessary, and objectively unreasonable to apprehend a fleeing motorcyclist who was suspected of committing only a minor traffic offense and who posed no threat of immediate harm to the officers or other motorists or pedestrians.

33. Fry and Grimes acted with reckless disregard to Summers' rights, privileges and immunities protected by the 4th Amendment to the United States Constitution and laws

enacted thereunder. Said rights, privileges and immunities were well known to any reasonable law enforcement officer such that neither Fry nor Grimes may not be able to claim qualified immunity for the breach thereof.

34. Fry and Grime's conduct proximately caused a deprivation of the known rights, privileges, and immunities secured to Summers, as to all citizens, by the 4th Amendment to the United States Constitution and laws enacted thereunder.

35. Furthermore, Blytheville had in place police policies, procedures, and customs which allowed and authorized the use of force such as used against Summers.

36. Fry, Grimes, and the city of Blytheville are jointly and severally liable to Summers in damages pursuant to 42 U.S.C. § 1983, including past and future pain and suffering, past and future mental anguish, permanent disability, and disfigurement, as well as punitive damages.

## II. VIOLATION OF THE FOURTEENTH AMENDMENT

37. Summers hereby incorporates and re-alleges the factual allegations of paragraphs one (1) through (28) as though fully alleged herein.

38. Fry deprived Summers of his liberty interest in his bodily integrity by recklessly initiating and continuing a pursuit of Summers' motorcycle when Summers was suspected of only a minor traffic violation and posed no threat of immediate harm to the officers or other motorist or pedestrians.

39. Grimes, in reckless disregard, deprived Summers of his liberty interest in his bodily integrity when she drove her car into the roadway in front of Summers' motorcycle and failed to providing him adequate time to stop or otherwise avoid running into her vehicle.

40. Grimes set up a roadblock which did not allow sufficient warning to Summers

to enable him to bring his motorcycle to a safe and controlled stop.

41. As a result, Summers' motorcycle rammed into the back of Grimes' patrol car with his body slamming into the rear of Grimes' patrol car, then hurling over it onto the pavement in front. Summers suffered life threatening injuries and had to be airlifted to an emergency room in Memphis, Tennessee.

42. Said actions of Fry and Grimes were in reckless disregard for the obvious consequence of: a) continuing a pursuit of Summers' motorcycle when Summers was suspected of only a minor traffic violation and posed no threat of immediate harm to the officers or other motorist or pedestrians; and b) failing to providing Summers adequate reaction time to stop or otherwise avoid hitting Grime's vehicle; and in reckless disregard for Summers' liberty interest in his bodily integrity.

43. Said actions of Fry and Grimes are sufficiently egregious to be a violation of the notions of a civil and orderly society that protects personal liberty from arbitrary government action that shocks the conscious of the court.

44. Fry and Grimes are liable to Summers in damages pursuant to 42 U.S.C. § 1983, including past and future pain and suffering, past and future mental anguish, permanent disability and disfigurement, as well as punitive damages.

## STATE CLAIMS

### III. VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT (ACRA), A.C.A. § 16-123-101 ET SEQ.

45. Summers hereby incorporates and re-alleges the factual allegations of paragraphs one (1) through (28) as though fully alleged herein.

46. Fry deprived Summers of his inherent and inalienable liberty right of bodily integrity protected by Article 2, Section 2 of the Arkansas Constitution, by recklessly

7

initiating and continuing a pursuit of Summers' motorcycle when Summers was suspected of only a minor traffic violation and posed no threat of immediate harm to the officers or other motorist or pedestrians.

47.  Grimes deprived Summers of his inherent and inalienable liberty right of bodily integrity protected by Article 2, Sections 2 and 15 of the Arkansas Constitution when she seized Summers by setting up a roadblock which did not allow sufficient warning to Summers to enable him to bring his motorcycle to a safe and controlled stop or otherwise avoid running into Grimes' vehicle..

48.  Said actions of Fry and Grimes were in reckless disregard for the obvious consequence of failing to providing Summers adequate reaction time to stop or otherwise avoid Grime's vehicle.

49.  As a result, Summers' motorcycle rammed into the back of Grimes' patrol car, the roadblock, his body slamming into the rear of Grimes' patrol car, then hurling over it onto the pavement in front. Summers suffered life threatening injuries and had to be airlifted to an emergency room in Memphis, Tennessee.

50.  Said actions of Fry and Grimes are sufficiently egregious to be a violation of the notions of a civil and orderly society that protects personal liberty from arbitrary government action that shocks the conscious of the court.

51.  Fry and Grimes are liable to Summers in damages for violation of the Arkansas Civil Rights Act (ACRA), codified at Ark. Code Ann. § 16-123-101 et seq., including past and future pain and suffering, past and future mental anguish, permanent disability and disfigurement, as well as punitive damages.

8

## IV. NEGLIGENCE

52. Pleading alternatively, Summers hereby incorporates and re-alleges the factual allegations of paragraphs one (1) through (28) as though fully alleged herein.

53. Fry and Grimes negligently, without regard for life and limb operated their motor vehicles in such a fashion as to cause Summers to collide with Grimes' vehicle. Such negligence on the part of the defendants being the following:

   a. failure to maintain proper control of their vehicles;

   b. failure to use ordinary care for the safety of others in the operation of their vehicles; and,

   c. otherwise negligently operating their motor vehicles.

54. The negligence of Fry and Grimes, as set out in the preceding paragraphs, was the direct and proximate cause of personal injury to Summers.

55. As a direct and proximate result of the above-described negligence, Summers endured past pain and suffering and likely will endure future pain and suffering for which he is entitled to recover compensatory damages.

56. As a direct and proximate result of the above-described negligence, Summers endured past mental anguish and likely will endure future mental anguish for which he is entitled to recover compensatory damages.

57. As a direct and proximate result of the above-described negligence, Summers has incurred past medical bills and likely will incur future medical bills for which he is entitled to recover compensatory damages.

58. Furthermore, Summers has sustained permanent disabling conditions as a result of this incident for which he is entitled to recover compensatory damages.

## DAMAGES

59. For the acts and omissions complained of herein, Summers seeks the

03/26/2015  11:21  City of Blytheville   (FAX)870 762 0667   P.013/015

following relief:

    a. Compensatory damages for violation of his rights, privileges, and immunities protected by the United States Constitution, including the 4th and 14th Amendments;

    b. Compensatory damages for violation of his rights, privileges, and immunities protected by the Arkansas Constitution;

    c. Compensatory damages for violation of his rights, privileges, and immunities protected by the Arkansas Civil Rights Act;

    d. Compensatory damages for pain and suffering, emotional distress, physical injuries, etc;

    e. Punitive damages;

    f. Reasonable attorney's fees and costs; and,

    g. All other damages to which Summers is entitled under state common law.

60. Plaintiff reserves the right to plead further as discovery may reveal.

61. PLAINTIFF DEMANDS A JURY TRIAL

WHEREFORE, Plaintiff, Jeremy Summers, requests a judgment against Defendants, Chelsey Crimes, Jonathon Fry, the city of Blytheville, Arkansas, and the Arkansas Municipal League, jointly and severally, for compensatory and punitive damages for the violations of his civil rights protected by the United States Constitution and federal laws; and for the pendant state tort claim and violations of his civil rights protected by the Arkansas Constitution and the Arkansas Civil Rights Act; for reasonable attorney's fees and costs; and for all other just and proper relief as warranted by the facts and law.

Respectfully submitted for
Jeremy Summers, Plaintiff herein

/s/ Morris W. Thompson

10

Morris W. Thompson, ABN#80145

MORRIS W. THOMPSON LAW FIRM, P.A.
P. O. Box 662
Little Rock, AR 72203
Tele: (501) 661-8100
Fax: (501)372-4101
Email:mwthompsonlaw@sbcglobal.net

11